UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | No. 6:03-CR-23-DCR |
| | ) | No. 6:08-CV-7014-DCR |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| MIRANDA CREECH, | ) | |
| | ) | |
| Defendant/Movant. | ) | |

*** *** *** ***

On April 14, 2008, Defendant Miranda Creech filed a pro se[1] motion under 28 U.S.C. §
2255. *See* DE # 110 (Motion to Vacate). The District Judge referred the matter to the undersigned
for a recommended disposition. The United States responded, *see* DE #115 (Response), and
Defendant filed a reply brief. *See* DE #121 (Reply). After reviewing the record, the Court ordered
and held an evidentiary hearing limited to two distinct issues raised in Creech's motion. *See* DE
#131 (Minute Entry Order); DE #134 (Transcript). The matter is now ripe for consideration. For
the reasons discussed below, the Court recommends that the District Court fully DENY § 2255
relief.

**I. Background Information**

On April 24, 2003, a federal grand jury in this District returned a thirteen-count Indictment
against Miranda Creech. *See* DE #1 (Indictment). Specifically, Creech faced the following charges:

---

[1]

Pro se petitions receive a comparatively lenient construction by the Court. *See Franklin v.
Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (noting that "allegations of a *pro se* habeas petition,
'though vague and conclusory, are entitled to a liberal construction'" including "active
interpretation" toward encompassing an allegation stating "federal relief").

1) conspiracy to possess with intent to distribute and to distribute of 50+ grams of methamphetamine (21 U.S.C. § 846); 2) conspiracy to manufacture 50+ grams of methamphetamine (21 U.S.C. § 846); 3) possession with intent to distribute 5+ grams of methamphetamine (21 U.S.C. § 841(a)(1)) on September 9, 2002; 4) possession of a measurable quantity of pseudoephedrine on September 9, 2002 (21 U.S.C. § 841(c)(2)); 5) possession of equipment, products, and materials used to manufacture methamphetamine on September 9, 2002 (21 U.S.C. § 843(a)(6)); 6) possession of firearms and ammunition by a convicted felon on September 9, 2002 (18 U.S.C. § 922(g)(1)); 7) possession of an unregistered destructive device (fire bomb) (26 U.S.C. § 5861(d)); 8) knowingly carrying a destructive device (fire bomb) during and in relation to drug trafficking crimes of September 9, 2002 (18 U.S.C. § 924(c)(1)(B)(ii)); 9) possession of equipment, products, and materials used to manufacture methamphetamine on October 29, 2002 (21 U.S.C. § 843(a)(6)); 10) use, carrying, brandishing, and discharge of a firearm during and in relation to a drug trafficking crime of October 9, 2002 (18 U.S.C. § 924(c)); 11) possession with intent to distribute 5+ grams of methamphetamine on November 25, 2002; 12) possession of a measurable quantity of pseudoephedrine, preparatory to methamphetamine manufacturing, on November 25, 2002 (21 U.S.C. § 841(c)(2)); and 13) possession of firearms and ammunition by a convicted felon (18 U.S.C. § 922(g)(1)) on November 25, 2002. *See id.* at 2-8.

At arraignment, Defendant received the Indictment and pleaded not guilty. *See* DE #7 (Arraignment Minute Entry). Through counsel, Creech later filed a motion to suppress all evidence obtained during two distinct, warrant-based searches. *See* DE #14 (Motion to Suppress). After holding an evidentiary hearing, *see* DE # 29 (Minute Entry), Magistrate Judge J. B. Johnson, Jr., recommended that the District Judge deny Defendant's motion. *See* DE #32 (Report and

Recommendation).  Defendant, through counsel, timely filed objections to the recommendation, *see* DE #33 (Objection), and the United States responded.  *See* DE #34 (Response to Objection).  Ultimately, the District Judge adopted Magistrate Judge Johnson's Report and Recommendation and denied Creech's motion to suppress.  *See* DE #35 (Memorandum Opinion and Order).

Defendant's jury trial began on December 9, 2003.  *See* DE #51 (Jury Trial Minute Entry).  Over the course of the three-day trial, the United States called twenty-nine witnesses, including several persons who obtained methamphetamine from Defendant and/or assisted him in its manufacturing.  Creech's counsel cross-examined government witnesses but did not call any defense witnesses.  Instead, during closing argument, defense counsel conceded that Defendant committed a majority of the crimes charged.  According to the trial transcript, defense counsel informed the jury that the United States had produced "overwhelming" evidence of Defendant's guilt as to nine (possibly ten) of the thirteen charges against Creech.  *See* DE #112 Closing Transcript ("C. Tr."), at 43 ("[T]he evidence is overwhelming that Mr. Creech is guilty of those counts, both Count 1 and Count 2."; "I think the evidence establishes guilt on those charges and we're not denying that to you at this time so Counts 3 and 11, he's guilty."; "And in Counts 4, 5, 12, and 9, involved possession of pseudoephedrine or equipment, knowing it was going to be used to manufacture methamphetamine.  And here again I think the evidence clearly showed that Mr. Creech is guilty of those offenses."; "[I]n any event, they [guns] were there and he had access to them so Count 13, possession, he's guilty of that too."); *id.* at 44 (expressing some uncertainty as to Defendant's guilt on Count 6).  However, as for charges carrying more severe penalty ranges (*i.e.*, particularly Counts 8 and 10), trial counsel continued to contest Creech's guilt.  *See id.* at 45-61.

Ultimately, the jury delivered a guilty verdict as to all 13 counts in the Indictment.  *See* DE

#57 (Special Jury Verdict). As a result of the conviction, Creech received an imprisonment term totaling 1,136 months and 4 days. *See* DE #70 (Judgment). The Sixth Circuit later vacated the judgment and remanded for re-sentencing in accordance with *United States v. Booker*, 125 S. Ct. 738 (2005). *See* DE #84 (Order of USCA). On remand, Judge Reeves issued an amended judgment of life plus 660 months. *See* DE #96 (Amended Judgment). The Sixth Circuit affirmed the sentence on appeal. *See* DE#107 (Information Copy).

Acting pro se, Defendant filed the instant § 2255 motion premising relief on several theories of ineffective assistance and a claim of improper sentencing. *See* DE #110 (Motion to Vacate). The United States responded in opposition and appended affidavits from trial counsel (James E. Hibbard), appellate counsel (Michael J. Stengel), and re-sentencing counsel (Willis G. Coffey). *See* DE #115 (Response). Creech filed a reply brief, which included an affidavit specifically contesting trial counsel's version of plea negotiations and trial strategy, two issues at the center of Defendant's ineffective assistance of counsel claims. *See* DE #121 (Pro Se Reply).

After reviewing the record and relevant case law, the Court set an evidentiary hearing specifically limited to plea communications and contested trial strategy. *See* DE #124 (Order). As required by law, the Court appointed counsel to assist Creech at the hearing. *See id.*

## II. Evidentiary Hearing and Factual Findings

Section 2255 requires an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" *See* 28 U.S.C. § 2255(b); *see also Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999) ("Where there is a factual dispute, the *habeas* court must hold an evidentiary hearing to determine the truth of the petitioner's claims."). A defendant seeking § 2255 relief bears the "relatively light" burden of establishing the

need for an evidentiary hearing. *See id.*; *Valenzuela v. United States*, 217 F. App'x 486, 490 (6th Cir. 2007). When a defendant alleges ineffective assistance of counsel based on counsel's concession of guilt, the presence in the record of conflicting affidavits regarding trial strategy consultation and/or consent generally requires an evidentiary hearing. *See Wiley v. Sowders*, 669 F.2d 386, 389 (6th Cir. 1982) (remanding for an evidentiary hearing where the presence of contradictory affidavits from defendant and defense counsel created "a dispute as to whether . . . the petitioner freely and knowingly consented to the trial strategy"); *see also Valenzuela*, 217 F. App'x at 490-91 (upholding district court refusal to hold a hearing where defendant "did not submit an affidavit or any other evidence indicating that [counsel] did not seek [defendant's] consent or did not consult with [defendant] about defense strategy").

As a result of conflicting affidavits submitted by Defendant and trial counsel, and in accordance with the cited case law, the Court, on May 15, 2009, conducted an evidentiary hearing in this matter. *See* DE #131 (Minute Entry Order). Attorney Pam Ledgewood, appointed per the Criminal Justice Act, represented Defendant and called Creech as the sole witness for the movant. AUSA Stephen Smith represented the United States and called James Hibbard, Creech's trial counsel, as the sole government witness. The Court heard argument from both counsel and granted Creech leave to file a pro se statement in the record. *See* DE #132 (Pro Se Brief). The transcript is of record. *See* DE #134 (Transcript) (hereinafter "Tr.").

A. Evidentiary Hearing

     1. *Testimony of Miranda Creech*

According to Creech's testimony, he met with trial counsel "three, no more than probably four times" between arraignment and trial. *See* Tr. at 8. During that period, counsel informed

5

Defendant that he "was in a bad spot, and the only chance [he] had to do anything would be at trial." *See id.* at 10; *id.* (noting that Creech interpreted "bad spot" to mean that he "was facing some time, but nothing near like what time I've got"); *but see id.* at 20 (recalling that the magistrate judge, at arraignment, asked Creech if he "was aware of the charges").

Addressing trial strategy, Defendant testified that he "never discussed with Mr. Hibbard a strategy consisting of admitting guilt to the jury on [some] counts . . . and then arguing not guilty on some other counts." *See id.* at 11. In Creech's own words: "I never would agree in such a strategy like that, because if – what would I be getting out of a strategy of him pleading me guilty to a jury to some charges that would carry up to a life sentence and not for the charges that carry up to what, 55 year? I wouldn't agree to such strategy like that because I wouldn't see no win situation come out of that . . ." *See id.* at 11-12. However, on cross examination, Defendant testified that trial counsel specifically discussed "the bomb charge" and its corresponding 30-year sentence. *See id.* at 23. He also "recall[ed] [counsel] saying that we need to try to beat what charges we can . . ." *See id.*

Relatedly, when asked (on direct examination) why he did not object to the strategy either prior to sentencing or on appeal, Defendant stated that, during closing argument, he "was in a sort of a depression stage . . . and . . . was here, but . . . wasn't completely focused like [he] should be." *See id.* at 12; *id.* ("It wasn't until I got the transcripts and seen it in writing that I realized what had really happened."); *id.* at 24-25 ("I was here, but I wasn't fully aware of what he's saying because if I was, when he had pled me guilty to the jury, I would have caught onto that, instead of waiting until I got the transcripts . . ."). Creech also testified as to his education level, *see id.* at 9 (noting "eighth grade education" at the time of trial), his methamphetamine addiction, *see id.* at 13 (smoking

"a gram or more" per day for a period of "four or five years"), and the effects of a head injury. *See id.* at 17-19. However, on cross examination, Creech admitted to assisting counsel during the trial and to alerting counsel to an error in the presentence report. *See id.* at 25-27; *id.* at 25 (correcting AUSA Smith: "Actually, actually, my attorney was sitting there with me. I didn't have to call him over. He was sitting right there with me."); *id.* at 27-28 (recalling trial testimony).

As to plea communications, Creech testified that Hibbard failed altogether to discuss such negotiations. *See id.* at 14-15; *id.* at 34. When asked, Defendant indicated that he wished, "[t]o an extent," that he had pleaded guilty, citing the possibility of a three-point Guidelines reduction for acceptance of responsibility. *See id.* at 15.

2. *Testimony of James Hibbard*

Prompted by AUSA Smith's introductory questions, Hibbard testified that he has practiced in the Eastern District of Kentucky for 27 years, "participating as a CJA attorney . . . [d]uring most of [that period]." *See id.* at 36. When asked specifically about his representation of Defendant, counsel testified that Creech's indictment either included a penalty page or Hibbard acquired one to cover with Defendant. *See id.* at 37. Hibbard also testified that, prior to sentencing, he reviewed the presentence report (and the significant penalty ranges) with Defendant. *See id.* at 47-48; *id.* at 55.

Discussing the decision to employ the trial strategy at issue, Hibbard characterized Creech's case as "extremely difficult" and as "an impossible situation to win most of the counts." *See id.* at 41. Per counsel's testimony:

> It was my opinion, especially after reviewing the Jencks Act material, that we basically had no defense to most of the charges. I asked Mr. Creech if he had – whether any witnesses that could testify on his behalf, and he did not, or told me that there were none. We basically had no defense. . . . So I proposed to him that we . .

. admit guilt or admitted on his behalf to most of the charges and just try to defend those which we could at least make an effort on, and which represented the bulk of the time he was facing. And it was my opinion then, and it still is, that that strategy increases your credibility on the counts to which you are defending. It is certainly a last ditch defense strategy, I suppose, but that's where we were. That was the – that was all we had.

*See id.* at 44. Based on this assessment, Hibbard testified that he discussed this strategy with Defendant. *See id.* According to Hibbard, Creech agreed to the strategy and "did not complain" at trial "when those admissions of guilt were made to certain counts in closing argument." *See id.* at 42. Creech also did not complain in the interim between verdict and sentencing. *See id.* ("During the approximately I'm assuming four months between the conviction and the sentencing, he never mentioned it, and – well, at no time after that did he ever raise any issue about that with me."); *id.* at 57 (testifying that Creech "agree[d] to the entirety of the strategy, that is, the specific counts [Hibbard] would concede guilt on and those [Hibbard] would contest guilt on").

As to plea communications, Hibbard testified as follows:

Q. Could you explain to the Court your recollection of what was discussed with Mr. Creech?

A. Well, I had the discussions with you [AUSA Smith], you know, what sort of offer we could get in the way of a plea agreement, and discussed with Mr. Creech what I was advised, that no plea offer was forthcoming that did not include a plea to three counts, I believe, if I can look at my affidavit, Counts 1, 8, and 10. And so I did discuss with him that I could get no plea offer that did not include a plea to at least those three counts.

Q. And did you explain to him the significance of pleading to those three particular counts and how that might affect him at sentencing?

A. Yes, because the – those three counts, Count 1 carried a mandatory minimum sentence of ten years, and, of course, it could have been, and I think it turned out to be considerably more, but there was a mandatory minimum of ten. Count 8 had a mandatory minimum of 30 years consecutive, and Count 10, I believe it's 10, yeah, 25 years mandatory minimum consecutive. So a plea to those three counts, disregarding any additional charges and disregarding if he got anything more than

the mandatory minimum on Count 1, still was a mandatory minimum of 65 years.

*See id.* at 38-39.  When asked about advising Defendant as to the Sentencing Guidelines, Hibbard also admitted that he "may well not have discussed [acceptance of responsibility credit] with him [Creech] because . . . in his case, it would have had no impact whatsoever on the sentence."  *See id.* at 39; *id.* at 39-40 ("Whether he got the benefits of a plea or not, he would still have at least 65 years in mandatory minimums.  He'd already rejected that.  So there was no sentencing benefit to be gained from a plea, and so it's very possible I did not discuss that with him."); *id.* 40 (affirming that he advised Creech in "plain terms" that "the only plea offer . . . would really result in essentially a life sentence for a 30-something-year-old man").

Finally, Hibbard also testified as to his perception of Creech's competency before and during trial.  *See id.* at 43; *id.* at 56 (testifying that he did not "perceive the basis for approaching the Court to seek a competency evaluation of Mr. Creech").  Counsel recalled Defendant's assistance and communication during trial and indicated no concerns regarding Creech's level of education.  *See id.* at 43 ("I've had many clients who were more articulate and better educated, but I've also had a lot worse.  So I don't recall having taken an inordinate amount of time with him on any particular points, so I did feel that he was able to assist me to the extent that there was any assistance to be made.").  Hibbard also testified that he did not recall any adverse effects on Creech's participation as a result of "extreme depression," prior substance abuse, or medical issues.  *See id.* at 43-44.

## B. Factual Findings

The Court finds that Creech had knowledge of the applicable penalty range.  In short, Defendant's testimony regarding potential penalties was inconsistent and disproved by the record. At arraignment, Defendant received a copy of the Indictment, which included a list of potential

penalties.  *See* DE #7 (Minute Entry); *see also* Tr. at 37 (Hibbard recalling only one instance - and not in Creech's case - in which he did not receive a copy of the penalty page with the Indictment). Moreover, even though Creech initially testified that he lacked notice of the severity of the penalty range, Defendant later referenced trial counsel's emphasis on a count carrying a 30-year sentence, *see id.* at 23, which Hibbard's testimony (as well as Creech's own affidavit) corroborates.  Thus, the Court discounts Defendant's claim that counsel failed to inform him of the applicable penalty range.

Additionally, the Court finds that trial counsel engaged in plea discussions, relayed the information to Creech, and reasonably advised Defendant to go to trial.  Per Hibbard's testimony, any plea agreement would have included guilty pleas to specific counts that, at a minimum, carried a 65-year mandatory prison term.  *See id.* at 39.  Defendant's repeated references to acceptance of responsibility credit under the Sentencing Guidelines do not impact this evaluation because Creech faced statutorily-mandated minimum and consecutive sentences if found guilty on the counts at issue.  Thus, the Court finds that trial counsel engaged in plea discussions before ultimately (and reasonably) advising Creech to proceed to trial.  Creech rejected the plea parameters discussed.

The Court also rejects Defendant's assertion that he lacked knowledge of and did not consent to the trial strategy of defending some charges while conceding guilt to others.  Hibbard provided credible testimony concerning both the absence of a desirable plea agreement and the need for such a "last ditch" defense strategy.  *See id.* at 44-45.  The record supports Hibbard's testimony.  As previously noted, any plea offer included guilty pleas to Indictment counts carrying a combined, statutorily-mandated imprisonment term of 65 years, effectively a life sentence for Creech, who was in his early thirties at the time of trial.  Additionally, the evidence of guilt in this case was "overwhelming," *see* DE #104 (Transcript for Re-Sentencing) at 45, and Creech could not and did

not identify to trial counsel any potential witnesses who could testify in his defense. Moreover, Defendant did not complain about the strategy during the interim between conviction and sentencing, *see* Tr. at 42, nor did he advise appellate counsel of any objection to trial counsel's strategy. Therefore, even though Creech attempts, in the § 2255 context, to characterize counsel's strategy as "outrageous" in order to prove he would have withheld consent if asked, the Court stands unpersuaded.

Finally, any testimony regarding Defendant's head injury, "depression state" and methamphetamine addiction do not impact these findings. By the time of trial, Creech had been in federal custody for four months and was not under the influence of drugs or alcohol. *See id.* at 31. Additionally, Hibbard testified that he did not witness any behavior to suggest impairment of Defendant's competency or ability to participate at trial. *See id.* at 43-44; *id.* at 56 (Hibbard testifying that he did not "perceive the basis for approaching the Court to seek a competency evaluation of Defendant"). In fact, even though Creech only had an eighth-grade education at the time of trial, he was able to assist in his own defense. Defendant suggested questions, recalled witness testimony, and alerted trial counsel to a discrepancy in the Pre-Sentence Report. Defendant also submitted a pro se letter, in advance of sentencing, detailing allegations of perjured trial testimony. *See* DE #67 (Order directing the filing of the letter in the record). Thus, nothing in the record supports Creech's contention that he was mentally absent during a majority of witness testimony and during closing argument. Indeed, he was attentive to and sentient about trial events.

Further, Creech admits in his affidavit, *see* DE #121-2, that Hibbard discussed a theory of going to trial and attempting "to be found 'not guilty' on some of the counts." *See id.* ¶ 2. He concedes that Hibbard focused direct attention, pre-trial, on avoiding the "bomb charge" with its 30-

year minimum term. *See* Tr. at 23. While Hibbard was consistent, logical, and reasonable throughout, Creech has vacillated between claiming he was too depressed to know what happened at trial to claiming he remembers enough to contradict Hibbard's detailed version of events. Creech's story simply is not credible, and as the habeas movant, Creech has the burden.

In sum, the Court finds as follows: 1) Defendant had knowledge of the potential penalty range prior to trial; 2) Counsel presented (and Creech rejected) an oral plea agreement; 3) Counsel discussed the trial strategy at issue, and Defendant agreed; and 4) Creech's vague competency-related suggestions have no impact on this analysis. Having resolved the noted conflicts in the record, the Court proceeds with its § 2255 analysis.

### III. Standard of Review

Under 28 U.S.C. § 2255, a federal prisoner may obtain post-conviction relief if a sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. *See* 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'") (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). A defendant alleging a constitutional violation must establish "an error of constitutional magnitude" and show that the error had a "substantial and injurious effect or influence on the proceedings" in order to obtain § 2255 relief. *See Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). When alleging a non-constitutional error, a defendant must prove the error constituted a "'fundamental defect which inherently results in a complete miscarriage of justice,'

12

or, an error so egregious that it amounts to a violation of due process." *See United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 82 S. Ct. 468, 471 (1962)); *see also Watson*, 165 F.3d at 488. In making a section 2255 motion, Movant bears the burden of proving his or her contentions by a preponderance of the evidence. *See McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

**IV. Analysis**

In his § 2255 motion, Defendant premises relief on allegations of ineffective assistance of counsel (at the trial, appellate, and re-sentencing levels) and improper sentencing. *See* DE #110 (Motion to Vacate). Based on the record, Creech has failed to prove, by a preponderance of the evidence, that any of the three listed counsel failed to afford effective assistance. Furthermore, Defendant procedurally defaulted the improper sentencing allegation by failing to raise the issue on direct appeal. Thus, Defendant is not entitled to relief under 28 U.S.C. § 2255.

A. Procedural Default

A § 2255 motion cannot substitute for a direct appeal. *See Capaldi v. Pontesso*, 135 F.3d 1122, 1124 (6th Cir. 1998) ("An application under § 2255 . . . should not be considered a substitute for direct appeal."); *Sunal v. Large*, 67 S. Ct. 1588, 1590 (1947) ("[T]he general rule is that the writ of habeas corpus will not be allowed to do service for an appeal."). To assert a claim not raised on direct review, a defendant ordinarily must show cause for the default and prejudice.[2] *See Bousley*

_____

[2] Proof of actual innocence also permits review of a claim not raised on direct appeal. *See Bousley*, 118 S. Ct. at 1611.

*v. United States*, 118 S. Ct. 1604, 1611 (1998); *United States v. Frady*, 102 S. Ct. 1584, 1594 (1982);

*Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003).   Additionally, "[i]f claims have been

forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available"

subject to an analysis under *Strickland v. Washington*, 104 S. Ct. 2052 (1984).  *See Grant v. United*

*States*, 72 F.3d 503, 506 (6th Cir. 1996).

Here, Defendant alleges that the District Judge exceeded his authority by sentencing Creech

for counts on which the jury did not return a guilty verdict.  *See* DE #110 (Motion to Vacate) at 9.

Specifically, Creech generally references a trial transcript noting "that the jury, when polled, only

found Miranda Creech guilty of Counts 1, 2, & 3 . . ."  *See id.*  Defendant's sentence encompasses

all counts in the Indictment.  *See* DE #70 (Judgment); DE #96 (Amended Judgment).

Defendant failed to raise this issue on direct appeal following both the initial judgment and

the amended judgment.  Furthermore, Creech fails to put forth any evidence as to the cause of and

any prejudice from procedural default.[3]  Creech also does not allege nor provide proof of actual

innocence.  Therefore, Defendant's claim of improper sentencing is procedurally defaulted.

Even absent procedural default, Creech is not entitled to relief premised on improper

sentencing.  Quite simply, the record clearly refutes Defendant's assertion that the jury only

convicted him of three, rather than all thirteen, counts in the Indictment.  The special verdict form,

signed by the jury foreperson, lists guilty verdicts as to all thirteen counts.  *See* DE #57 (Special Jury

Verdict).  The Judgment notes that Creech "was found guilty on count(s) 1, 2, 3, 4, 5, 6, 7, 8, 9, 10,

11, 12, and 13," *see* DE #70 (Judgment) at 1, and lists each count by title and section, nature of

---

[3]

The Court addresses Creech's related ineffective assistance claim in a separate section of this
Recommended Disposition.

offense, and end date. *See id.* at 1-2. The court of appeals, in its order remanding for re-sentencing in accordance with *United States v. Booker*, 125 S. Ct. 738 (2005), references "a jury verdict finding [Creech] guilty of *various* drug and firearm offenses." *See* DE #84 (Order of USCA) (emphasis added). In the subsequently filed sentencing memorandum, re-sentencing counsel discusses the minimum sentences that accompany counts 1, 2, 3, 8, and 10. *See* DE #89 (Sentencing Memorandum) at 5-6. Finally, the amended judgment, which the Sixth Circuit upheld on appeal, lists and defines all thirteen counts on which the jury found Creech guilty, *see* DE #96 (Amended Judgment) at 1-2, and delineates the respective imprisonment terms by count number. *See id.* at 3.

Even though Defendant references a transcript detailing the polling of the jury, such a transcript is absent from the record. Furthermore, the previously cited documents in the record lead the Court to believe that such a document does not and could not exist. As the movant, Creech bears the burden of proof, and mere repetition of a consistently refuted allegation does not make the showing by a preponderance of the evidence. Thus, Defendant is not entitled to the relief sought.

## B. Ineffective Assistance of Counsel

When asserting an ineffective assistance claim, a movant must prove both deficient performance and prejudice. *See Strickland*, 104 S. Ct. at 2064; *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a movant must prove ineffective assistance by a preponderance of the evidence). In order to prove deficient performance, a movant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *See Strickland*, 104 S. Ct. at 2064. A movant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *See id.* at 2064-

2065. Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *See id.* at 2065.

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *See id.* at 2064. In order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* at 2068. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *See id.* at 2069.

In his motion, Creech alleges that trial counsel 1) conceded Defendant's guilt as to some counts during closing argument without Creech's knowledge or consent, 2) failed to pursue or to inform Creech of a plea offer, 3) failed to investigate the evidence and to interview witnesses, 4) failed to move for severance of the felon-in-possession count, and 5) failed to challenge the search of Creech's residence. *See* DE #110 (Motion to Vacate) at 4-7. Additionally, Defendant alleges that appellate counsel was ineffective for failing to ensure that the record included transcripts for all stages of the trial. *See id.* at 7-8. Finally, Defendant claims that counsel failed to act as an advocate during re-sentencing. *See id.* at 11-12. None of these theories has merit.

1. *Trial Counsel*

a. *Concession of Guilt as Trial Strategy*

Trial counsel's decision to pursue a trial strategy that combined vigorous defense against some charges with concession of guilt to others during closing argument did not constitute ineffective assistance. Concessions of guilt by trial counsel may constitute reasonable trial strategy,

provided that counsel consulted with a defendant prior to employing the strategy. *See Valenzuela v. United States*, 217 F. App'x 486, 490 (6th Cir. 2007) (citing *United States v. Holman*, 314 F.3d 937, 840-44 (7th Cir. 2002) for the proposition that a concession of guilt "is a valid defense strategy but one which requires a client's consent"); *see also Florida v. Nixon*, 125 S. Ct. 551, 555 (2004) ("Defense counsel undoubtedly has a duty to discuss potential strategies with the defendant."). Generally speaking, a defendant must consent before counsel can pursue this trial strategy. *See Wiley*, 669 F.2d at 389; *Valenzuela*, 217 F. App'x at 490. However, "[a] presumption of prejudice is not in order based solely on defendant's failure to provide express consent to a tenable strategy counsel has adequately disclosed to and discussed with the defendant." *See Nixon*, 125 S. Ct. at 555.

Based on the record, which includes all briefing materials and testimony from the evidentiary hearing, trial counsel pursued a reasonable trial strategy after securing Creech's consent. A federal grand jury indicted Creech on thirteen counts covering various drug and firearms offenses. The evidence of guilt was "overwhelming," per the District Judge, and Defendant could not identify any defense witnesses to counter this hefty evidentiary weight. Additionally, the United States's plea offer would have required Creech to plead guilty to Counts 1, 8, and 10, at a minimum; together, those counts, subject to consecutive mandatory minimum imprisonment terms, carried "a total sentence of 65 years not counting any of the other charges." *See* Hibbard Aff. ¶ 7. Given these circumstances, trial counsel's formulation of a "last ditch" trial strategy was not unreasonable.

Furthermore, the record demonstrates that trial counsel discussed this strategy with Creech and secured consent. Defendant offered no objection, either at trial, before sentencing, or on appeal. Even though Defendant attempts to explain this lack of objection by reference to a "depressive state" that caused him to not comprehend his trial fully, such explanation fails in light of Creech's active

participation during trial and in advance of sentencing. Therefore, because Defendant fails to prove deficient performance by trial counsel, he is not entitled to § 2255 relief on this ineffective assistance claim. Simply put, the Court's credibility determination favors counsel here, and the dire trial circumstances fairly supported attorney Hibbard's strategic recommendation.

### b. *Plea Agreement*

Additionally, Defendant fails to show that trial counsel was ineffective for failure to negotiate or to inform Creech of a plea proposal. As previously noted, Hibbard engaged in plea discussions with the United States. Based on the number and severity of the charges against Creech, the United States, at a minimum, mandated that any agreement include guilty pleas as to three counts that, by statute, carried consecutive mandatory minimum sentences totaling 65 years, effectively a life sentence for a defendant in his early thirties. Hibbard informed Creech of the requisite terms, and Creech rejected the predicate. Hibbard reasonably agreed that the deal was unpalatable. Moreover, because the underlying statutes, rather than judicial discretion, governed the minimum penalty imposed, Creech could not benefit from acceptance of responsibility credit under the Sentencing Guidelines. Thus, any failure by trial counsel to discuss the Guidelines with Defendant did not prejudice Creech. He provides no basis for plea-related relief.

### c. *Reasonable Investigation*

In passing, Creech comments that trial counsel's concession of Defendant's guilt resulted from a failure to conduct an investigation sufficient to uncover defense witnesses and to assess the strength of the evidence against Creech. However, Defendant does not specifically address any relevant information or potential witnesses that trial counsel failed to uncover. As previously noted, trial counsel was not ineffective regarding trial strategy or plea negotiations, and Hibbard's

reasonable actions in both phases evidence proper advocacy and preparation. *See also* Tr. at 40-41 (Hibbard testifying that he reviewed discovery materials with Defendant). Creech has failed to put forth **any evidence** to contradict this assessment or to support an investigation-based theory; having failed to meet his burden of proof, Defendant is not entitled to relief.

### d. *Severance of Felon-in-Possession (18 U.S.C. § 924(c))*

Defendant also generally claims that counsel's failure to move to sever Count 13 "caused extreme prejudice to petitioner's defense." *See* DE #110 (Motion to Vacate) at 7. In support, Creech merely offers a string citation to four non-Sixth Circuit cases, without presenting any evidence showing that the District Judge would have granted a motion to sever. The United States, in its response, correctly notes that a combination of trial counsel's stipulation to the conviction and the District Judge's "cautionary instruction" blunted any potential prejudice arising from the jury's knowledge of Defendant's criminal history. Thus, a stipulation established the prior conviction. *See* DE #54 (Stipulation to Jury); *see also Old Chief v. United States*, 117 S. Ct. 644, 655-56 (1997) (discussing relationship between stipulation and prejudice from felony specifics); *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (noting prejudice dissipation for felony "introduced by stipulation"). Counsel, aware of potential prejudice from joinder, properly handled the matter.

Additionally, a review of the Indictment supports joinder of the 18 U.S.C. § 922 offense under Federal Rule of Criminal Procedure 8(a). *See id.* (requiring joined offenses to consist of "the same or similar character" or to be "based on the same act or transaction"). Creech's only conclusory theory is categorical – that § 922 joinder yields prejudice. That is not accurate legally. *See, e.g., United States v. Rugiero*, 20 F.3d 1387, 1391 (6th Cir. 1994) ("We presume, unless the defendant carries a strong burden of showing to the contrary, that the jury is 'capable of sorting out

evidence and considering each count . . . separately.'") (quoting *United States v. Swift*, 809 F.2d 320, 323 (6th Cir. 1987)); *United States v. Curtsinger*, Nos. 92-6044 & 92-6067, 1993 WL 424842, at *9 (6th Cir. Oct. 20, 1993) (upholding § 922 joinder based on the court's limiting instruction and defendants failure to meet his "heavy burden of showing that specific and compelling prejudice resulted from the joint trial").  Again, Defendant fails to articulate prejudice and to meet his § 2255 burden of proof, and the record does not show that counsel acted unreasonably by not seeking severance, in the context of this trial record.

e. *Fourth Amendment Challenge*

As a final ground of ineffective assistance, Creech claims that trial counsel "failed to challenge the warrantless search of petitioner's residence and curtilage."  *See* DE #110 (Motion to Vacate) at 7.  Hibbard filed a motion to suppress; Magistrate Judge Johnson held an evidentiary hearing and issued a recommended disposition.  *See* DE #14 (Motion to Suppress); DE #29 (Docket Call for evidentiary hearing); DE #32 (Report and Recommendations); DE #33 (Objections to Report and Recommendations); DE #43 (Transcript of Suppression Hearing).  There was no warrantless search in issue, since a warrant supported each search.  The record **clearly refutes** Defendant's allegation.  Creech is not entitled to relief.

2. *Appellate Counsel*

In addition to claims involving trial counsel, Defendant also alleges that appellate counsel's failure to ensure access to and evaluation of a complete set of transcripts amounted to ineffective assistance of counsel.  This claim serves as an attempt to show cause and prejudice for Creech's failure to raise the improper sentencing allegation on appeal.  In support, Creech cites to a transcript that purportedly shows that the jury, when polled, indicated a guilty verdict only as to Counts 1-3.

*See* DE #110 (Motion to Vacate) at 8; DE #121 (Reply) at 3 (citing Trial Transcript, December 11, 2003; pp. 123-28). Per Defendant's reply brief:

> Instantly, the trial transcript for Miranda Creech reveals that the jury returned guilty verdicts on Counts 1, 2 and 3 of the indictment. . . . The jurors were then individually polled on the aforesaid verdicts. They acknowledged that the verdicts read on Counts 1, 2 and 3, was their individual verdict. Jurors were then dismissed.

*See id.* The Court notes that this transcript is not currently in the record, and the United States did not address it in the response brief.

The record stands in stark contrast to Creech's characterization of the jury verdict and subsequent polling. As previously discussed, the special verdict form, signed by the jury foreperson, unambiguously lists guilty verdicts as to thirteen counts. *See* DE #57 (Special Jury Verdict). Trial counsel, who vigorously defended against three of the counts (7, 8, and 10) alleged to fall outside the jury's verdict, never asserted that the jury failed to convict on 10 of the 13 counts in the Indictment. The District Judge that presided over the trial and polled the jury also conducted both sentencing proceedings in this matter; both judgments indicate that the jury convicted Creech on all 13 counts.

Based on this record, the Court finds that Defendant is mistaken as to his interpretation of the jury verdict. Furthermore, the Court notes that Creech failed to append the relevant pages of the cited transcript to either his motion or his reply brief. The Court reiterates that Defendant, as the movant, bears the burden of proof. Due to the lack of ambiguity in the jury's verdict as reflected by the aforementioned documents, and the lack of proof, the Court cannot find that appellate counsel acted deficiently by failing to order a transcript of the jury poll. Therefore, Creech is not entitled to relief on this claim of ineffective assistance of counsel.

3. *Re-sentencing Counsel*

Finally, Creech also alleges that counsel appointed for re-sentencing purposes engaged in conduct amounting to ineffective assistance. Specifically, Defendant alleges that counsel failed to seek downward departures and failed to object when the District Judge imposed consecutive sentences. *See* DE #110 (Motion to Vacate) at 11-12.

The *Strickland* standard governs claims of ineffective assistance of counsel at sentencing. *See Keith v. Mitchell*, 455 F.3d 662, 670 (6th Cir. 2006). As with the other ineffectiveness claims, Defendant fails to show that re-sentencing counsel was deficient. To the contrary, the record demonstrates that counsel met with Creech, conducted a sufficient investigation of the case facts and applicable law, and drafted a sentencing memorandum that presented factors in favor of a reduced sentence. *See* Coffey Aff.; DE #89 (Sentencing Memorandum) at 3-6 (citing 18 U.S.C. § 3553(a) factors and applying them to relevant case facts). Additionally, the sentencing memorandum also correctly notes that statutory language, rather than judicial discretion, dictated a significant part of Creech's sentence. Re-sentencing counsel was not ineffective for failing to contest a judgment that included consecutive sentences. The two § 924(c) convictions – Count 8 and Count 10 – called for consecutive sentences as a matter of law. *See* 18 U.S.C. § 924(c)(1)(B)(ii) (as to Count 8); *id.* § 924(c)(1)(C)(i) (as to Count 10); *id.* § 924(c)(1)(D)(ii) (requiring an imprisonment term under subsection (c) to run consecutive to any other term of imprisonment). The jury found guilt as to each, establishing the validity of the resultant consecutive sentence.

In sum, Defendant has failed to prove, by a preponderance of the evidence, that trial counsel, appellate counsel, or re-sentencing counsel afforded ineffective assistance. Therefore, Creech is not entitled to the relief sought in his § 2255 motion.

## V. Certificate of Appealability

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000); *Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039-40 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissals on procedural grounds, as to when a Certificate of Appealability should issue, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Slack*, 120 S. Ct. at 1604.

Defendant has not made a "substantial showing" as to any claimed denial of rights. Even though the Court held an evidentiary hearing to resolve a factual conflict in the record, none of the grounds of relief offered by Creech presents a close constitutional issue that reasonable jurists would debate or contradict. As for the procedurally barred claims, Creech has not provided any evidence to undermine the reasonableness of the procedural analysis. Accordingly, the Court recommends that the District Court deny a Certificate of Appealability.

## VI. Recommendation

For the reasons discussed above, the Court recommends that the District Court DENY

Defendant Creech's motion for § 2255 relief. The Court also recommends that the District Court DENY a Certificate of Appealability.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 8th day of November, 2010.

Signed By:

*Robert E. Wier*

United States Magistrate Judge